IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
_____
                          :
LISA STURGIS,             :
                          :
           Plaintiff,     :        Civil No. 06-5011 (JBS)
                          :
      v.                  :
                          :
MATTEL, INC., et al.,     :
                          :
           Defendants.    :
_____
```

**APPEARANCES:**

Robert J. Hagerty, Esq.
CAPEHART & SCATCHARD, PA
Laurel Corporate Center
8000 Midlantic Drive - Suite 300
CS 5016
Mount Laurel, NJ 08054
    Counsel for Plaintiff Lisa Sturgis

Caroline Elkin, Esq.
Jean M. Vrola, Esq.
Sandi F. Dubin, Esq.
Andrew Lowell Gurman, Esq.
PAUL HASTINGS HANOFSKY & WALKER
75 East 55th Street
New York, NY 10022
    Attorneys for Defendants Mattel, Inc.; Mattel, Inc.
    Administrative Committee; and Administrative Committee of
    the Board of Directors of Mattel, Inc. Pension Committee

**Simandle, District Judge:**

## I.   INTRODUCTION

This matter is before the Court on the motion for summary
judgment by Defendants Mattel, Inc.; Mattel, Inc. Administrative
Committee; and Administrative Committee of the Board of Directors
of Mattel, Inc. Pension Committee ("Mattel").  Mattel seeks a
decision as a matter of law affirming its denial of pension,

health and welfare benefits to Plaintiff and dismissing
Plaintiff's ERISA and contract claims against it.  On November 9,
2007 the Court heard oral argument on the motion and reserved
decision.  For the reasons explained below, the Court finds that
Mattel is entitled to summary judgment.

## II.  BACKGROUND

Plaintiff Lisa Sturgis ("Plaintiff") worked for Mattel at
its Mount Laurel, New Jersey facility from 1997 to 2004.  That
facility closed permanently in the summer of 2004 and Plaintiff
stopped working for Mattel at that time.  Plaintiff alleges that
she was an employee of Mattel's from 1997-2004, working as a
Samples Coordinator in the Package Design Group where she
designed packaging for Mattel's toys.  Mattel denies that
Plaintiff's status was that of an employee; it classified her as
an independent contractor during her time working for Mattel.

On February 10, 2005, Plaintiff's attorney wrote to Mattel
claiming that it wrongfully denied her participation in its
pension and welfare benefit plans while employed by Mattel.
(Hagerty Ltr., Feb. 10, 2005, in Ex. B to Elkin Decl.).  Counsel
requested that the letter be considered an application for
benefits and that Mattel inform him of its decision "within the
time frame and in the manner required under the Employee
Retirement Income Security Act ("ERISA")."  (Id.)  Counsel also
requested that Mattel provide him with "all summary plan

descriptions, master plan documents and annual reports for all Mattel pension plans in effect from 1996 through July 2004" within thirty days.  (Id.)  In addition, he requested that Mattel inform him "of the various welfare benefit plans or insurance plans offered by Mattel during the same time period and costs associated with producing" those documents.

On March 9, 2005, Mattel's counsel responded that Mattel was unable to provide any relevant documents because the request was "overly broad."  (Huibonhoa Ltr., Mar. 9, 2005, in Ex. C to Elkin Decl.).  Plaintiff's counsel responded that the request was not overly broad and reiterated its request.  (Hagerty Ltr. Mar. 18, 2005, in Ex. D to Elkin Decl.).  Defendants then produced information on its benefit plans.  (See Huibonhoa Ltr., Apr. 18, 2005, in Ex. E to Elkin Decl.).

On February 17, 2006, Plaintiff applied for benefits under Mattel's Personal Investment Plan ("PIP"), Health & Welfare Plan, and for benefits related to vacation, holiday, and severance pay.  (ML 5-6 in Ex. A to Elkin Decl.).  Plaintiff submitted her address, Social Security number, and the dates she allegedly worked for Mattel.  (Id.)  It is unclear whether Plaintiff provided any additional documentation with her initial application.  On May 12, 2006, Mattel informed Plaintiff that she was not entitled to PIP benefits.  (Whitman Ltr., May 12, 2006, attached to Elkin Decl.).  The Administrative Committee of the

3

Board of Directors of Mattel, Inc. Pension Committee ("the
Committee") had determined that (1) Plaintiff was not an eligible
employee under the PIP, but rather, was an independent contractor
and (2) Plaintiff's claims for benefits were not timely because
she knew when she started providing services for Mattel in August
of 1996 that she was not a PIP participant, and, therefore, her
claims expired in August 2002, nearly four years earlier.  (Id.).
Mattel informed Plaintiff that she could appeal her denial with
the Committee within sixty days of receiving the denial letter.
(Id.).  Three days later, Plaintiff appealed the denials and
submitted several additional items: her own certification, dated
May 10, 2006; a phone list of the Package Design Group in which
she had allegedly been employed, which listed her name and phone
extension; and a printout apparently showing that Plaintiff's
address was in Mattel's email database for the Mount Laurel
facility employees.  (ML 996-1004 in Ex. A to Elkin Decl.).   By
letter dated July 14, 2006, the Committee upheld the denial.
(Charmello Ltr., July 14, 2006, ML 983-88 in Ex. A to Elkin
Decl.).  That letter also indicated that Plaintiff had exhausted
her appeal rights under Mattel's benefits policies and that she,
therefore, had the right to file suit in federal court.  (Id.)

     Plaintiff filed the Complaint in this action on October 18,
2006, claiming that Mattel wrongfully denied Plaintiff employee
benefits, in violation of ERISA; breached its fiduciary duty

under ERISA; failed to comply with ERISA's document disclosure requirements; and breached its contract with Plaintiff by failing to provide benefits.  Mattel filed this motion for summary judgment on all counts in June 2007.

## III. STANDARDS OF REVIEW

### A.  Motion for Summary Judgment

Summary judgment is appropriate when the materials of record "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.[1]

---

[1]  In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "[t]he nonmoving party's evidence 'is to be believed, and all justified inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999)(quoting Liberty Lobby, 477 U.S. at 255).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-30 (3d Cir. 1995)(citations omitted). The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  However,

**B.    Standards of Review for Benefit Determinations**

The parties agree that the plans at issue are covered by ERISA.  Insofar as the Court must review the benefit determination made by Mattel, a particular standard of review applies.  When an ERISA benefit plan gives the administrator discretionary authority to make decisions under the plan, as in this case, courts reviewing those decisions use an "arbitrary and capricious" standard, and overturn them only if they are "'clearly not supported by the evidence in the record[,] or [if] the administrator has failed to comply with the procedures required by the plan.'" Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagen of Am., Inc., 222 F.3d 123, 129 (3d Cir. 2000) (quoting Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 41 (3d Cir. 1993)).

In three circumstances, however, the Third Circuit requires a heightened standard of review.  See Pinto v. Reliance Standard Life Insurance Co., 214 F.3d 377 (3d Cir. 2000).  The first occurs when the plan administrator is operating under a structural conflict of interest.  See Pinto, 214 F.3d at 383. According to the Pinto court, only one of the three ways in which companies typically structure the relationship between the ERISA

---

the non-moving party "may not rest upon the mere allegations or denials of" its pleading in order to show the existence of a genuine issue.  Fed. R. Civ. P. 56(e).

plan administration, interpretation and funding presents a structural conflict of interest.  In explaining the three typical structures, the Court explained:

> First, the employer may fund a plan and pay an independent third party to interpret the plan and make plan benefits determinations.  Second, the employer may establish a plan, ensure its liquidity, and create an internal benefits committee vested with the discretion to interpret the plan's terms and administer benefits.  Third, the employer may pay an independent insurance company to fund, interpret and administer the plan.

Id.  According to the Pinto court, the third scenario outlined above "generally presents a conflict and thus invites a heightened standard of review."  Id.  The court reiterated that the Third Circuit "previously held that the first two arrangements do not, in themselves, typically constitute the kind of conflict of interest mentioned in Firestone."  Id.

Second, the heightened arbitrary and capricious standard of review may be appropriate if the plaintiff shows "demonstrated procedural irregularities, bias or unfairness in the review [by the plan administrator] of the claimant's application for benefits."  Kosiba, 384 F.3d at 66; Vitale, 402 F.3d at 283.  This occurs when the plan administrator (a) relies, self-servingly, on one doctor's expertise; (b) treats the same facts inconsistently; or (c) disfavors the claimant when at a "crossroads."  Pinto, 214 F.3d at 393-94; see also Kosiba, 384 F.3d at 66.  However, the claimant bears the burden of proving

procedural bias or bad faith by presenting the court with
specific evidence of bias.  See Bill Gray Enters., Inc. Employee
Health & Welfare Plan v. Gourley, 248 F.3d 206, 216 (3d Cir.
2001)("Unless specific evidence of bias or bad-faith has been
submitted, plans...are reviewed under the traditional arbitrary
and capricious standard); see also Goldstein v. Johnson &
Johnson, 251 F.3d 433, 435-36 (3d Cir. 2001)(heightened arbitrary
and capricious review is required when "the beneficiary has put
fourth specific evidence of bias or bad faith in his or her
particular case.")

Finally, the third reason the Court might use a heightened
standard of review is if a claimant's "status as a former
employee" seems to require it.  Kosiba, 384 F.3d at 65.
Specifically, in Stratton v. E.I. DuPont de Nemours & Co., 363
F.3d 250, 255 (3d Cir. 2004), the Third Circuit recognized that
an employer administering an unfunded plan risks "the loss of
morale and higher wage demands that could result" from the
employer denying benefits to a current employee.  On the other
hand, "when a former employee seeks benefits, this conflict-
mitigating consideration is not present."  Kosiba, 384 F.3d at 65
(emphasis in original) (citing Smathers v. Multi-Tool,
Inc./Multi-Plastics, Inc. Employee Health & Welfare Plan, 298
F.3d 191, 198 (3d Cir. 2002).

In this case, Plaintiffs argue that the heightened standard should apply because Defendants "mistreated" many of its employees by denying benefits, not just Plaintiff.  In reality, that argument cuts the other way.  Inconsistent treatment would be one procedural irregularity that would heighten this Court's suspicions under <u>Kosiba</u>.

The Court finds that no heightened standard should apply to Defendants' PIP eligibility determinations.  Defendants have shown that Mattel created a trust fund for paying employee benefits.  Thus, it did not pay benefits out of its own funds and the heightened scrutiny required when an employer both determines eligibility for benefits and pays those benefits out of its own funds does not apply. (Mattel Reply Br. at 4)(citing <u>Smathers v. Multi-Tool, Inc./Multi-Plastics,Inc. Employee Health & Welf. Plan</u>, 298 F.3d 191 (3d Cir. 2002) and ML 140, 144).

Further, although sometimes a claimant's status as a former employee might reduce the Administrator's incentive to treat a claimant as fairly as it should, in this case Plaintiff was never provided with benefits, during or after her time working for Mattel.  This is not a situation in which the Plaintiff was treated differently when her employment ended and, therefore, her status as a former employee should not raise the Court's level of review.  Indeed, Plaintiffs make no sound argument for why the Court should apply a heightened standard of review; therefore,

the normal arbitrary and capricious standard should apply to the
determination denying eligibility in Mattel's Personal Investment
Plan.

However, the non-PIP plans in which Plaintiff is also
alleging she should have been able to participate, the Health and
Welfare plans, are funded by a combination of contributions from
Mattel and the covered employee.  (ML 575-578).  According to
plan documents, it appears that benefit determinations are made
by outside insurance companies for insurance claims (id.), but by
Mattel itself for vacation, sick pay, severance and similar
benefits.  (ML 597-98).  Defendants claim that Mattel itself
Administers all of these plans, in its discretion.  (Mattel Br.
at 6) (citing ML 565).  This arrangement may have caused a
conflict because permitting more workers to access these plans
would directly impact Mattel's costs.  Therefore, a heightened
arbitrary and capricious standard shall apply to the eligibility
determinations related to the Health and Welfare plans.

In performing both reviews, the Court must look only at the
evidence before the Administrator when it made its decision.
"'[W]hether a claim decision is arbitrary and capricious requires
a determination whether there was a reasonable  basis for [the
administrator's] decision, based upon the facts as known to the
administrator at the time the decision was made.'"  Smathers v.
Multi-Tool, Inc., 298 F.3d at 199-200 (quoting Levinson v.

10

Reliance Std. Life Ins. Co., 245 F.3d 1321, 1326 (11th Cir.
2001)).  See also Abnathya v. Hoffman-La Roche, Inc., 2 F.3d 40,
48 n.8 (3d Cir. 1993) (barring consideration of medical evidence
that was not presented to plan administrator before final
decision rendered on plaintiff's benefits claim).

     Finally, it is noted that the arbitrary and capricious
standard of review applies to all discretionary decisions by a
plan administrator, whether the administrator's decision was
based on the interpretation of the plan or on factual
determinations, so long as the plan authorizes the administrator
to make such determinations.  Mitchell v. Eastman Kodak Co., 113
F.3d 433 (3d Cir. 1997).

## IV.  ANALYSIS

### A. Statute Of Limitations

     Defendants argue that Plaintiff's ERISA claims are barred by
the applicable six-year statute of limitations because she was on
notice since she began work for Mattel in 1997 that she was not
eligible for benefits.  Plaintiff argues that she was not on
notice that Mattel was excluding her from its benefit plans until
she received the plan documents in April of 2005.

     The record indicates that Plaintiff began working at
Mattel's Mount Laurel facility in 1997 and never received any
benefits from Mattel.  Plaintiff's counsel conceded at oral
argument that no taxes were ever withheld from Plaintiff's

paycheck – no income tax, social security tax, or unemployment
insurance tax - and no benefit payments were ever deducted.
Thus, Defendants argue, she was on notice, or reasonably should
have been, since 1997 that Mattel did not consider her to be an
employee entitled to benefits under its plans and, therefore, her
claims accrued in 1997.  Indeed, the Complaint indicates
Plaintiff's awareness that Mattel classified her as an
independent contractor throughout her time working for Mattel.
(Compl. ¶ 7)

There is also evidence that in December 2003, Plaintiff
affirmed her status as an independent contractor by signing a
services agreement with Mattel.  See Compl. ¶¶ 7, 56-59.  That
agreement was effective beginning January 1, 2004.  (Svcs. Agrmt.
at 1, 6 ¶ 11.1  in Docket Item 24-2).  While Plaintiff asserts
that Mattel had nefarious goals in asking her to sign the
agreement, it is undisputed, as counsel conceded at oral
argument, that Plaintiff knew at that time that Mattel did not
consider her to be an employee entitled to benefits and that a
consequence of signing the agreement was that she would not have
access to benefits.

Count II of the Complaint is a breach of fiduciary duty
claim that has a statute of limitations as follows:

> No action may be commenced under this
> subchapter with respect to a fiduciary's
> breach of any responsibility, duty, or
> obligation under this part, or with respect to

a violation of this part, after the earlier
of--

(1) six years after (A) the date of the last
action which constituted a part of the breach
or violation, or (B) in the case of an
omission the latest date on which the
fiduciary could have cured the breach or
violation, or

(2) three years after the earliest date on
which the plaintiff had actual knowledge of
the breach or violation;

except that in the case of fraud or
concealment, such action may be commenced not
later than six years after the date of
discovery of such breach or violation.

29 U.S.C. § 1113.

Counts I and III of the Complaint are claims that do not
relate to the breach of fiduciary duties; therefore this statute
of limitations does not apply to those claims.  Rather, for those
claims, the Court must borrow the statute of limitations from the
most analogous state law claim.  Vernau v. Vic's Market, Inc.,
896 F.2d 43, 45 (3d Cir. 1990).  Here, New Jersey is the only
state with any connection to this action and the parties agree
that these claims are analogous to a breach of contract claim,
which has a six-year statute of limitations.  See N.J. Stat. Ann.
§ 2A:14-1.

Thus, the longest possible limitations period, on all
claims[2], is six years.  Defendants do not argue that a shorter

---

[2]  Plaintiff also explicitly asserts a contract claim that
Defendants argue is preempted by ERISA.

13

period applies.  Plaintiff filed this action on October 18, 2006.
The issue, then, is whether her claim accrued after October 18,
2000.  "The date of accrual of the ERISA non-fiduciary duty
claims asserted is determined as a matter of federal common law."
Romero v. Allstate Corp., 404 F.3d 212, 221 (3d Cir. 2005).
Third Circuit precedent generally indicates that ERISA non-
fiduciary duty claims accrue, according to the discovery rule,
"when the plaintiff discovers, or with due diligence should have
discovered, the injury that forms the basis for the claim[; that
is,] an ERISA non-fiduciary duty claim will accrue after a claim
for benefits due under an ERISA plan has been made and formally
denied, [or, before then] 'when there has been a repudiation of
the benefits by the fiduciary which is clear and made known to
the beneficiary.'" Id. at 222-23 (quoting Miles v. N.Y. State
Teamsters Conf. Pension and Retirement Fund, 698 F.2d 593, 598
(2d Cir.), cert. denied, 464 U.S. 829 (1983)).

    This Court agrees that Plaintiff was on notice since 1997
that she was not eligible for benefits.  Therefore, her claim
accrued at that time.  A reasonable adult worker, such as
Plaintiff, knows or should know that when employment taxes are
not deducted and benefits are not offered, a business does not
consider that worker to be an employee eligible for benefits
under its plans.  There is no argument that Plaintiff lacked the
sophistication or employment experience necessary to understand

14

that such deductions are normally taken from the paychecks of employees but not from the pay of independent contractors.  A reasonable worker would recognize with each paycheck that she was receiving her gross compensation with no deductions, beginning with her first paydays in 1997.  No reasonable person could fail to notice that she was not being paid as an employee and that she was not contributing to any benefit funds.  Accordingly, Plaintiff's claims for PIP and Health and Welfare Benefits accrued in 1997 and this action, filed more than six years later, is not timely.

The Court must therefore grant Defendants' motion for summary judgment on statute of limitations grounds.[3]  Only an unreasonable jury could find that Plaintiff had no reason to know until 2001 that she was ineligible for benefits under the Mattel plans.  Further, because Plaintiff signed the Services Agreement in 2003, reflecting no change in status and affirming that Defendants considered her to be an independent contractor, she waived any claim related to her subsequent year of work, apart from the statute of limitations.  No reasonable inference arises

---

[3]  Defendants also moved for summary judgment on the grounds that the claims asserted here should be barred by the doctrine of laches. Because the Court finds this case is barred by the statute of limitations, it need not determine whether laches should apply.  See Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 134 (3d Cir. 2000) (in absence of fraud or concealment, laches determination generally follows statute of limitations determination).

for Plaintiff from the Services Agreement to suggest that
Plaintiff's status was changed from employee to independent
contractor in 2003, and Plaintiff points to no evidence of such a
change.  Accordingly, the six-year statute of limitations ran
three years before this Complaint was filed and Plaintiff's case
is time-barred and shall be dismissed.

**B.    Plaintiff's Employment Status**

In addition, the Court finds that Plainitff's ERISA claims,
even if not barred by the statute of limitations, would fail on
the merits.  ERISA "authorizes a suit by a participant to recover
benefits due under the terms of an ERISA plan or to enforce or
clarify rights under the ERISA plan.  29 U.S.C. § 1132(a)(1)(B)."
Bauer v. Summit Bancorp, 325 F.3d 155, 160 (3d Cir. 2003).  As
the Third Circuit has explained, only certain people can bring
ERISA claims: those who are covered by the plans from which they
seek benefits.

> An action for benefits under an ERISA plan may
> be brought only by a participant in or
> beneficiary of an ERISA plan. 29 U.S.C. §
> 1102(a)(2); 29 U.S.C. § 1104(a)(1). Under
> ERISA, a "participant" is defined as "any
> employee or former employee of an employer ...
> who is or may become eligible to receive a
> benefit of any type from an employee benefit
> plan ... or whose beneficiaries may be
> eligible to receive any such benefit." 29
> U.S.C. § 1002(7).

Id.  Thus, "[a] plaintiff must satisfy two requirements to
establish participant status.  First, the plaintiff must be a

16

common law employee.  Second, the plaintiff must be, 'according to the language of the plan itself, eligible to receive a benefit under the plan.  An individual who fails on either prong lacks standing to bring a claim for benefits under a plan established pursuant to ERISA.'"  Id. (quoting Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323-24 (1992)) (citations omitted).  In this case, although Defendants do not concede that Plaintiff is a common law employee, they concentrate their argument on the second prong, and argue that she was not eligible to receive benefits under the terms of the plans themselves.  Plaintiff, on the other hand, concentrates her arguments on the first prong and argues that because she was an employee under the common law, it was arbitrary for Mattel to exclude her from the benefits, which were supposed to be available to employees.

For the reasons explained below, the Court finds that it was not arbitrary or capricious for Mattel to find that Plaintiff was not eligible to receive benefits under the PIP or Health and Welfare plans.  Therefore, Plaintiff has no standing to bring this ERISA action.

1.  PIP Plan

In determining whether the denial of PIP benefits was arbitrary and capricious, the Court must determine whether the administrator's decision that Plaintiff was not eligible to receive PIP benefits because she was not an "employee" within the

17

meaning of the plan was a supportable interpretation of the plan and the evidence before the Committee.  The parties agree and the record establishes that the PIP plan, for all relevant years, provides the Committee the discretionary authority to determine eligibility for benefits and to construe the terms of the plan. See (ML 82-83, 204-05, 310) ("The Committee shall have all powers and discretion necessary to . . . administer, interpret, construe and apply this Plan in its discretion and to decide all questions which may arise or which may be raised under this Plan by any ... person whatsoever, including but not limited to all questions relating to eligibility to participate in the Plan . . . ."). Thus, the Court may not substitute its judgment or interpretation of the plan for the judgment of the administrator and may overturn the denial of benefits only if the record clearly does not support that decision.  Orvosh, 222 F.3d at 129.

The PIP plan for all relevant years provides for benefits to eligible employees and defines an "employee" as follows:

> each person currently employed in any capacity
> by the Company or an Affiliated Company any
> portion of whose income is subject to
> withholding of income tax and/or for whom
> Social Security contributions are made by the
> Company.

(See ML 23, 131, 257).

The Administrative Committee determined that Plaintiff was not an "employee" within the meaning of the PIP plan because the Company did not actually withhold income tax from her wages. (ML

18

1-2).  That is, her income was not "subject to" income tax

withholding by Mattel, they reasoned.  Therefore, she could not

be an eligible employee entitled to participate in the PIP plan.

(<u>Id.</u>)

Plaintiff argues that decision was arbitrary and capricious

because Defendants were required by law to withhold income tax

from her wages; therefore, she claims, her income was "subject to

withholding of income tax" within the meaning of the PIP plan,

making her an "employee" entitled to participate in the plan and

receive benefits.

Because Defendants' interpretation of the term "employee"

and their application of that term to Plaintiff's situation are

reasonable and supported by the evidence, the Court shall grant

summary judgment on Plaintiff's ERISA claims related to denial of

her participation in the PIP plan.  She was not a participant in

the plan and is therefore not entitled to sustain this action for

PIP benefits under 29 U.S.C. § 1132(a)(1)(B).

       2.   <u>Health and Welfare Plans</u>

Mattel also determined that Plaintiff was not eligible for

benefits under its Health and Welfare plans because it classified

her as an independent contractor throughout her tenure.

According to the Handbooks that governed these plans, an

individual was "entitled to participate in the [Mattel] Benefit

Plans, if [that person was] classified by Mattel as a regular

employee of Mattel who [meets additional requirements]." (2003 Summary of H&W plans at ML 420). <u>See also</u> ML 622 (coverage only for regular employees). Plaintiff admits in her Complaint that Mattel did not classify her as a regular employee. However, the Health and Welfare plans are not as clearly defined as the PIP plan and did not have an outside administrator. Thus, the Court reviews Mattel's determination that Plaintiff was not an employee within the meaning of the plan under a heightened standard of review, for all years prior to 2004. From January 1, 2004 onwards, Plaintiff waived any argument that she should be considered an employee instead of an independent contractor by signing the Services Agreement.

The 1995 H&W Plans defined regular full-time employees as "[e]mployees who are regularly scheduled to work 40 or more hours per week." (ML 595). In contrast, independent contractors were "[i]ndividuals who <u>are not considered</u> employees of the company, but who are engaged to perform a specific and limited service." (<u>Id.</u>) (emphasis added). Defendants argue that the highlighted language makes clear that its classification of Plaintiff is controlling. However, viewing the facts in the light most favorable to Plaintiff, she was regularly scheduled to work for Mattel forty hours per week or more.

The 1999 H&W Plans had basically the same definition for "regular full-time" employees, but defined independent

contractors as "individuals who are not employees of the Company, but who are engaged to perform a specific and limited service and are not eligible for employee provided benefits."  (ML 712). That definition does not include the "are not considered" language that is in the earlier plan.

The 2001 H&W plan defines regular employees as employees who work for Mattel on a regularly scheduled basis, as did the earlier plans.  But it defines independent contractors as "[i]ndividuals who provide and are compensated for services to Mattel on a project by project basis.  Independent contractors do not receive and are not eligible for any Mattel benefits available to" regular employees.

The 2003 Handbook provides that benefits are available to regular full time and regular part-time employees, but the parties have not provided the Court with the portion of that Plan that defines those terms. (Page 8 of that July 2003 plan appears to have been omitted from their submissions to this Court.)

Even viewing the facts in the light most favorable to Plaintiff, and applying a heightened standard of review, Mattel is entitled to summary judgment on its decision to exclude Plaintiff from the Health and Welfare plans.  The Health and Welfare plans vest discretion with Mattel to determine who is and who is not an eligible employee for purposes of benefit determinations.  Given that there is no outside administrator of

the plan, this Court must perform a slightly elevated review.

Plaintiff's entitlement to benefits turns not only on whether she meets the statutory definition of "employee," but also whether she meets the plans' definitions for eligible participants. Bauer v. Summit Bancorp., 325 F.3d 155 (3d Cir. 2003). It was not arbitrary or capricious for Mattel, in making its benefits determination, to find that Plaintiff, whom Mattel concededly had always classified as an independent contractor, was not eligible for benefits:

> Nothing in ERISA requires employers to establish employee benefits plans. Neither does it require that every employee is entitled to participate in a plan that it does decide to offer, for, as the Supreme Court, in Shaw v. Delta Air Lines, Inc., 463 U.S. 85 (1983), stated: "ERISA does not mandate that employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits." Id. at 91.

Bauer, 325 F.3d 155 at 159 (citation omitted). Because Mattel never classified Plaintiff as an "employee" for any purposes, nothing in the plan's language requires a finding that Plaintiff was an eligible employee. It was appropriate and not arbitrary for Mattel's benefit determination to reflect the company's general classification, treatment and payment of Plaintiff as an independent contractor.

There is no disputed issue of fact that precludes granting summary judgment to Defendants on Plaintiff's ERISA claims.

**C.   Document Penalties**

ERISA provides for penalties to plan administrators who fail to provide plan information to plan participants and beneficiaries:

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1)(B).

Mattel argues that Plaintiff's claims for document penalties should be dismissed because (1) there is no obligation to provide documents to anyone who is not a plan participant or beneficiary, (2) Plaintiff's first request did not provide clear notice of the documents sought, (3) Mattel acted in good faith in providing plan documents and (4) Plaintiff suffered no prejudice from any delay in providing documents.

Because the Court finds that Plaintiff was not an eligible plan member, she is not entitled to penalties for any alleged failure to provide plan documents to her.

23

On February 10, 2005 Plaintiff's counsel requested that Mattel provide him with "all summary plan descriptions, master plan documents and annual reports for all Mattel pension plans in effect from 1996 through July 2004" within thirty days. Approximately thirty days later, on March 9, 2005, Mattel's counsel responded that Mattel was unable to provide any relevant documents because the request was "overly broad." (Huibonhoa Ltr., Mar. 9, 2005, in Ex. C to Elkin Decl.). Plaintiff's counsel responded nine days later that the request was not overly broad and reiterated the request. (Hagerty Ltr. Mar. 18, 2005, in Ex. D to Elkin Decl.). Thirty days after that reiteration, Mattel produced the documents regarding its benefit plans. (See Huibonhoa Ltr., Apr. 18, 2005, in Ex. E to Elkin Decl.).

The Court shall grant the motion for summary judgment barring this claim because Plaintiff is not a participant or beneficiary in the PIP plan, according to the analysis above. Because the possibility of penalties only arises when there is a refusal to provide documents to a participant or beneficiary, this provision of ERISA provides Plaintiff with no rights. The dangers inherent in refusing information to individuals who are actually participating in or beneficiaries of an insurance plan are not at issue when an individual non-participant is seeking entry into a plan.

Furthermore, because the decision whether to permit
penalties under this provision is a discretionary one, and
because Mattel corresponded with Plaintiff within thirty days to
attempt to clarify what she needed and then supplied the
requested documents shortly thereafter, the Court shall grant
summary judgment to Mattel on these claims.

D.   **Breach of Contract**

Mattel moves for summary judgment on Plaintiff's breach of
contract claim, Count IV, arguing that ERISA preempts it.[4]
Plaintiff does not oppose this aspect of the motion for summary
judgment.

Count IV of the Complaint alleges: "By failing or refusing
to provide plaintiff with the benefit of any of the Policies,
Mattel breached an express or implied contract with plaintiff."
(Compl. ¶ 77.)

Under 29 U.S.C. § 1144(a), ERISA preempts most state law
claims as they relate to employee benefit plans covered by ERISA,
like the plans at issue here.

> The purpose of ERISA is to provide a uniform
> regulatory regime over employee benefit plans.
> To this end, ERISA includes expansive
> pre-emption provisions, see ERISA § 514, 29
> U.S.C. § 1144, which are intended to ensure
> that employee benefit plan regulation would be
> "exclusively a federal concern." Alessi v.

--------------------------------------------------

[4]   Mattel also argues that the contract claim is barred by
the statute of limitations, laches and waiver.

25

<u>Raybestos-Manhattan, Inc.</u>, 451 U.S. 504, 523 (1981).

<u>Aetna Health Inc. v. Davila</u>, 542 U.S. 200, 208 (2004).  When plaintiffs "bring suit only to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA [,their]  state causes of action fall 'within the scope of' ERISA § 502(a)(1)(B), [29 U.S.C. § 1132(a)(1)(B),] and are therefore completely pre-empted by [that section of] ERISA . . . ."  <u>Id.</u> at 214.

In this case, Plaintiff's breach of contract claim is a claim for benefits from ERISA-regulated plans and is, therefore, preempted.  Therefore, the Court should grant the unopposed motion for summary judgment as to Count IV.

**E.   Attorneys' Fees**

Defendants also argue that they are entitled to attorneys' fees insofar as the Court finds that Plaintiff's claims are frivolous.  The Court disagrees.  First, although the Court has granted summary judgment, it has not determined that this action was frivolous.  Second, Defendants cite no statutory authority for the grant of attorneys' fees in ERISA actions and the Court is aware of none.

> It is the general rule in the United States that in the absence of legislation providing otherwise, litigants must pay their own attorney's fees.  <u>Alyeska Pipeline Co. v.</u>

> Wilderness Society, 421 U.S. 240 [(1975)].
> Congress has provided only limited exceptions
> to this rule "under selected statutes granting
> or protecting various federal rights." Id.,
> at 260.

Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 415 (1978).

While Christianburg, the only legal authority Defendants do cite,

interpreted the attorneys' fees provision in Title VII of the

Civil Rights Act, 42 U.S.C. § 2000e-5(k), to provide for the

availability of fees to some defendants where the plaintiff's

claim was frivolous, unreasonable or vaxatious, that Act does not

make fees available in ERISA actions.[5]  Accordingly, the request

for fees shall be denied.

## V.   CONCLUSION

The Court shall grant summary judgment to Defendants for

Plaintiff's ERISA claims related to the PIP and Health and

Welfare benefits plans because the statute of limitation

precludes those claims and, even if it did not, Mattel's

decisions to deny her participation in those plans were not

arbitrary and capricious.  Additionally, Plaintiff waived any

entitlement to such benefits beginning January 1, 2004, when she

---

[5]   The argument can be made that the Christianburg standard
for prevailing defendants' attorneys' fees applies to all fee-
shifting statutes, see Hensley v. Eckerhart, 461 U.S. 424, 429
n.2 (1983) (which generalizes the Christianburg holding, in
dictum, in a case involving a prevailing plaintiff's fee
application under 42 U.S.C. § 1983).  In any event, this Court
does not find Plaintiff's suit to be frivolous, unreasonable or
vexatious.

agreed to work for Mattel as an independent contractor or under the guise that she was an independent contractor.

The Court shall also grant Defendants' unopposed motion for summary judgment on Plaintiff's breach of contract claims, which are preempted by ERISA.

Finally, the Court shall preclude Plaintiff's claims for document penalties as she is not entitled to ERISA's protections.

Because the Court has granted summary judgment on all counts of the Complaint, the case shall be closed.  An appropriate Order shall be entered.


**November 29, 2007**                          **s/ Jerome B. Simandle**
Date                                           JEROME B. SIMANDLE
                                               U.S. District Judge